Tony MONCUS, Deceased *v.* BILLINGSLEY LOGGING
and American Interstate Insurance Company

CA 05-264 . 219 S.W.3d 680

Court of Appeals of Arkansas
Opinion delivered December 7, 2005

*Hart Law Firm, L.L.P.*, by: *Neal W. Hart*, for appellant.

*Michael E. Ryburn*, for appellee.

ANDREE LAYTON ROAF, Judge. This is a workers' compensation case involving the "going-and-coming rule." Tony Moncus was killed in an automobile accident while on his way to work for appellee Billingsley Logging. The issue on appeal is whether he was performing employment services at the time he was killed. The ALJ found that Moncus was not performing employment services, and the Commission agreed. Moncus's representative ("Moncus") argues on appeal that this ruling is erroneous. We affirm.

Moncus worked as a log cutter for Billingsley Logging. On August 19, 2003, he was killed in a motor-vehicle accident while driving his personal truck to the site where he would be logging that day. Mitchell Billingsley, the owner of Billingsley Logging, testified that he tried to get Moncus to ride in a company truck but that Moncus insisted upon driving his personal truck to the job site because he wanted to leave the job site early for a personal errand. Billingsley told the whole logging crew to meet at a service station that was centrally located to everyone's house around 6:30 a.m. so that he could show them where they would be logging that day. Billingsley told the crew to follow him, and the caravan left the parking lot on their way to the new logging site with everyone riding in a company truck except for Moncus. According to Billingsley, the crew only met like this before work approximately four to five times a year because, most of the time, the crew knew how to get to the logging site where they would be working for the day.

Moncus was killed in a head-on motor-vehicle accident before he ever arrived at the logging site. He was driving his own pickup truck and there were no tools or equipment in his truck that belonged to Billingsley Logging. Moncus was paid according to the number of tons of wood that he cut, so he was paid nothing on the day of his death because he had not yet cut any wood.

A claim was filed for workers' compensation benefits on behalf of Moncus. The administrative law judge (ALJ) held that Moncus did not sustain a compensable fatal injury because he was not performing an employment service at the time the accident occurred. The ALJ found that the preponderance of the evidence did not prove that Moncus's death was the result of any injury that was compensable under the Workers' Compensation Act. The Arkansas Workers' Compensation Commission affirmed and adopted the decision of the ALJ.

In reviewing decisions from the Workers' Compensation Commission, we view the evidence and all reasonable inferences deducible therefrom in the light most favorable to the Commission's findings, and we affirm if substantial evidence supports the decision. *Wal-Mart Stores, Inc. v. Brown*, 82 Ark. App. 600, 120 S.W.3d 153 (2003). Substantial evidence exists if reasonable minds could reach the same conclusion. *Id.* The issue on appeal is not whether we might have reached a different result or whether the evidence would have supported a contrary finding. *Id.* If reasonable minds could reach the Commission's conclusion, we must affirm the Commission's decision. *Id.* We will not reverse the Commission's decision unless we are convinced that fair-minded persons with the same facts before them could not have reached the Commission's conclusions. *Id.*

Arkansas Code Annotated section 11-9-102(4)(A)(1) (Supp. 2003) defines compensable injury as "an accidental injury causing internal or external harm . . . arising out of and in the course of employment. . . ." Employment services are performed when the employee does something that is generally required by his or her employer. *Collins v. Excel Spec. Prods.*, 347 Ark. 811, 69 S.W.3d 14 (2002); *Pifer v. Single Source Transp.* 347 Ark. 851, 69 S.W.3d 1 (2002). We use the same test to determine whether an employee was performing "employment services" as we do when determining whether an employee was acting within "the course of employment." *Collins, supra; Pifer, supra.* The test is whether the injury occurred "within the time and space boundaries of employment, when the employee [was] carrying out the employer's purpose or advancing the employer's interests directly or indirectly." *Collins, supra; Pifer, supra.*

An employee traveling to and from the workplace is generally not acting within the course of employment. *Swearengin v. Evergreen Lawns*, 85 Ark. App. 61, 145 S.W.3d 830 (2004). The "going-and-coming" rule ordinarily precludes recovery for an injury sustained while an employee is going to or returning from work. *Id.* The rationale behind this rule is that an employee is not within the course of his employment while traveling to and from his job, and all persons, including employees, are subject to the recognized hazards of travel to and from work in a vehicle. *Id.; Am. Red Cross v. Hogan*, 13 Ark. App. 194, 681 S.W.2d 417 (1985). There are exceptions to the going-and-coming rule:

(1) where an employee is injured while in close proximity to the employer's premises; (2) where the employer furnishes the transportation to and from work; (3) where the employee is a traveling salesman; (4) where the employee is injured on a special mission or errand; and (5) when the employer compensates the employee for his time from the moment he leaves home until he returns home.

*Swearingen, supra* (citing *Jane Traylor, Inc. v. Cooskey*, 31 Ark. App. 245, 792 S.W.2d 351 (1990)).

Appellant concedes that if Moncus had been killed while he was simply driving to work like he did on most days, to a location he already knew, this claim would not be compensable. Appellant argues, however, that the day in question was not a "normal" workday because Billingsley ordered his employees to meet him at a gas station so that he could have the employees follow him to the tract of land because only he knew where it was. Appellant asserts that Moncus was performing employment services when he was killed driving to the job site because Billingsley admitted that meeting at the gas station benefited his company and insured that he could successfully conduct his business on the day in question.

There is no question that meeting at the gas station and following Billingsley in convoy fashion to the job site was not normally how the employees got to work, and, in fact, this was quite rare. It is also clear that this case fits within the going-and-coming rule, and it does not meet any of the exceptions to this rule. At his own request, Moncus was traveling to the job site in his personal vehicle that contained none of Billingsley Logging's property. Moncus was not being paid at the time of the accident and would not have been paid until he arrived at the job site and began to cut trees.

The rationale of the ALJ, which was adopted by the Commission, was the following:

> In the present claim I find that [Moncus] was not performing an employment service at the time that the tragic accident occurred. As discussed above, employees of [Billingsley Logging] were responsible for providing their own transportation to and from the tracts of land where timber was cut each day. On rare occasions, approximately two to three times each year, work would begin on a new tract of land and the employees would not be familiar with the location of that tract of land. Although the employees meet Mr. Billingsley and follow him to the tract of land on the first day the

timber is cut from such tracts, it cannot be said that their travel to the tract of land advances the employer's purpose or interest on those days any more than any other day when the employees travel to the tract of land where timber is to be cut.

■ We find that this case is analogous to *Hogan, supra,* where this court held that the going-and-coming rule precluded a nurse working in a bloodmobile from receiving workers' compensation benefits for injuries sustained while en route to meet the unit. In *Hogan,* the nurse was subject to risks common to all others on streets and highways and there was no substantial evidence to support the conclusion that it was the Red Cross's customary practice to provide transportation during inclement weather even though, on at least one occasion, it had provided transportation. *Id.* In the present case, while it was not customary for the logging employees to meet at the gas station to follow Billingsley, they did do this a few times per year when commencing work at a new job site. In either case, Moncus was required to travel to the actual job site where his work would begin, and his case does not fall within one of the recognized exceptions to the going-and-coming rule. For these reasons, his claim is not compensable.

Affirmed.

BAKER, ROBBINS, GRIFFEN and CRABTREE, JJ., agree.

BIRD, J., dissents.

S AM BIRD, Judge, dissenting. I respectfully disagree with the conclusion of the majority that appellant, Tony Moncus, was not performing employment services at the time of his accidental death. Appellee Billingsley Logging[1] was in the business of harvesting logs under contract with Weyerhaeuser. Moncus was employed by Billingsley as a log cutter who was paid according to the weight of the logs that he cut. The site of the log harvesting varied in location from time to time and was determined by Billingsley in coordination with Weyerhaeuser. Under normal circumstances, Moncus would know the location of the job site on any given day, and would drive his personal truck from his home to the site, where he would begin his

---

[1] Billingsley Logging is a sole proprietorship owned by Mitchell Billingsley. Billingsley Logging and Mitchell Billingsley will be referred to interchangeably throughout this dissenting opinion simply as Billingsley.

assigned job of cutting logs. However, on rare occasions, "two or three times a year" according to Billingsley, a work site would be unknown to Billingsley's employees in advance, so they would be instructed by telephone to meet at a location specified by Billingsley, from which location the employees would follow Billingsley in convoy fashion to the day's work site. The day that Moncus was killed, August 19, 2003, was one of those rare occasions.

Billingsley testified that on August 19, he instructed Moncus and the other employees to meet him at the Shell gas station in Nashville, Arkansas, "because we [were] moving to a new tract of timber over in the Hope area and they would have to follow me to work to know where they were going. They didn't know where it was. I did." Billingsley further testified that meeting at the Shell station "was not an optional meeting, it was mandatory if they wanted to work that week," and that "[w]e did not discuss how we were going to get to the new tract of land. I just told them to stay behind me. To follow me. It was kind of like a convoy. I was leading. I expected them to follow me." Moncus was killed in a head-on automobile collision while following Billingsley to the new job site. In my opinion, Moncus was performing employment services at the time of his fatal automobile accident, and his death was therefore a compensable workers' compensation claim.

I disagree with the majority's holding that this case is analogous to *American Red Cross v. Hogan*, 13 Ark. App. 194, 681 S.W.2d 417 (1985). In *Hogan*, a nurse was precluded by the going-and-coming rule from receiving workers' compensation benefits when she was injured in an automobile accident while she was en route to a location where she was to meet a bloodmobile that would transport her to a designated place of work. However, Moncus's death did not occur while he was en route to the Shell station. Had that been the case, I would agree that his trip would have been within the going-and-coming rule and that his death would not be compensable under our workers' compensation law. Rather, here, Moncus had safely arrived at the Shell station where Billingsley had instructed his employees to meet him, and he was later killed while performing the task he was directed to perform, following his employer to the new work site.

In my view, the majority's analysis of this case misses the mark by failing to acknowledge that workers' compensation cases involving the going-and-coming rule, both before and after the passage of Act 796 of 1993, have been analyzed in the light of whether an employee was acting at the direction of his or her

employer. Simply put, when a claimant is doing something that is generally required by his or her employer, the claimant is providing employment services. *Ray v. Univ. of Arkansas*, 66 Ark. App. 177, 990 S.W.2d 558 (1999). *See also Linton v. Arkansas Dep't of Correction*, 87 Ark. App. 263, 190 S.W.3d 275 (2004); *Shults v. Pulaski County Special Sch. Dist.*, 63 Ark. App. 171, 976 S.W.2d 399 (1998). The phrase "performing employment services" is synonymous with the phrase "acting within the course of employment," in that the test for determining both is whether the injury occurred "within the time boundaries of employment, when the employee [was] carrying out the employer's purpose or advancing the employer's interests directly or indirectly." *Collins v. Excel Spec. Prods.*, 347 Ark. 811, 69 S.W.3d 14 (2002).

I disagree with the Commission's finding that it could not be said that the employee's travel to a tract of land where new work would begin, which location was not familiar to the employees, advanced the employer's purpose or interest any more than any other day when the employees travel to a tract where timber was cut. As the majority notes, Billingsley admitted that having his employees meet him at the gas station benefitted his company and insured that he could successfully conduct his business on the day at issue. Moncus was placed on the highway at his employer's direction, dutifully following the employer from Nashville to an unknown location near Hope to learn where he was to cut logs that morning.

The majority repeatedly notes that Moncus was driving his own vehicle at the time of his fatal accident, apparently to make it clear that Moncus's accident did not fall within the employer-provided-transportation exception to the going-and-coming rule. It seems to be the position of the majority that the employees who advanced Billingsley's interests by going to the unknown logging site in Billingsley's trucks would have been afforded workers' compensation protection, while employees, like Moncus, who advanced Billingsley's interests by following Billingsley to the unknown work site in their private vehicles would not have been afforded workers' compensation protection. In my opinion, this approach makes the controlling issue the manner in which an employee carried out his advancement of the employer's interests, instead of whether the employee was performing employment services at the time of his or her accident.

The majority also emphasizes that Moncus was not engaged in log cutting, and therefore was not being paid, at the time of his

fatal accident. The majority ignores well-established precedent that employment, for workers' compensation purposes, is not limited to the task that a person was hired to do. Whatever the normal course of employment may be, the course of employment may be enlarged when the employer assigns tasks outside the usual scope of employment. *Bell v. Tri-Lakes Servs.*, 76 Ark. App. 42, 61 S.W.3d 867 (2001). The fact that an employee is not compensated during travel is not dispositive in determining whether employment services are being performed; however, whether an employee requires an employee to do something may be dispositive of whether the activity constituted employment services. *Id. See also Olsten Kimberly Quality Care v. Pettey*, 328 Ark. 381, 944 S.W.2d 524 (1997); *Matlock v. Arkansas Blue Cross Blue Shield*, 74 Ark. App. 322, 49 S.W.3d 126 (2001); *Ray v. Univ.of Arkansas, supra; Arkansas Dep't of Correction v. Glover*, 35 Ark. App. 32, 812 S.W.2d 692 (1991).

I would hold that Moncus, even though traveling in his own vehicle so that he could leave early in the afternoon, was carrying out his employer's purpose and directly advancing the employer's interests by following him to the new job site in the morning. I would hold that Moncus was performing employment services and, thus, that his claim was not precluded by the going-and-coming rule.

I would reverse the denial of benefits in this workers' compensation claim. Therefore, I respectfully dissent.